OPINION JUDGMENT ENTRY
{¶ 1} Appellant Jeffrey Ossman appeals the decision of the Court of Common Pleas, Licking County, following his conviction for burglary, a felony of the second degree. The Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.
 {¶ 2} On the afternoon of January 2, 2002, Craig Sturtz returned to his home near Pataskala and observed a man with long black/gray hair and wearing a military-style parka, hiding next to the house. The man, which appellant later identified at trial as appellant, eventually ran to his pickup truck and sped away. During this encounter, Sturtz was able to observe his yellow toolbox in the truck, and made a note of the license number. After receiving Sturtz's 911 call, Licking County Sheriff's deputies traced the truck's plate to appellant, who resided on Tollgate Road in Pataskala. Deputy Boerstler was dispatched to investigate, and decided to proceed directly to appellant's address. At about 1:20 pm, Boerstler arrived, observing the aforementioned pickup truck parked outside. Nobody answered the door, but after backup arrived, the officers effectuated a warrantless entry and arrested appellant.
 {¶ 3} On January 10, 2002, appellant was indicted by the Licking County Grand Jury on one count of burglary. Appellant initially pled not guilty. On February 26, 2002, appellant filed a motion to suppress the physical evidence obtained and any statements made as a result of a police search of his residence on the night of the burglary. A suppression hearing was held on March 15, 2002; the court subsequently issued a judgment entry denying the motion to suppress. Appellant thereafter changed his plea to no contest, and was found guilty of burglary. Appellant appealed to this Court regarding the denial of his motion to suppress. We reversed the decision of the trial court. See Statev. Ossman, Licking App. No. 02 CA 65, 2002-Ohio-6411.
 {¶ 4} Upon remand to the trial court, appellant reentered his original plea of not guilty. The matter proceeded to a jury trial on April 24, 2003. This resulted in a hung jury. A second jury trial was conducted on September 23, 2003. Appellant was thereupon found guilty of burglary, and sentenced to five years in prison.
 {¶ 5} Appellant filed a notice of appeal on October 8, 2003, and herein raises the following three Assignments of Error:
 {¶ 6} "I. The trial court erred when it overruled appellant's motion to dismiss based upon the state's noncompliance with the `speedy trial' statute contained in ohio revised code Section2945.71.
 {¶ 7} "II. The trial court suppressed the initial identification of the appellant; any subsequent identifications were impermissibly tainted, and should have been suppressed as fruit of the poisonous tree.
 {¶ 8} "III. The verdict was against the manifest weight and sufficiency of the evidence."
 I. {¶ 9} In his First Assignment of Error, appellant claims the trial court erred in denying his speedy trial motion to dismiss. We disagree.
 {¶ 10} The right to a speedy trial is encompassed within theSixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through theFourteenth Amendment. State v. Ladd (1978), 56 Ohio St.2d 197,383 N.E.2d 579; State v. Pachay (1980), 64 Ohio St.2d 218,416 N.E.2d 589. Ohio's Speedy Trial statute codifies the constitutional guarantee of a speedy trial. Pachay, supra. Our initial task in reviewing a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71.Oregon v. Kohne (1997), 117 Ohio App.3d 179, 180,690 N.E.2d 66; State v. DePue (1994), 96 Ohio App.3d 513, 516,645 N.E.2d 745. Our review of the trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. State v. McDonald
(June 30, 1999), Mahoning App. Nos. 97CA146 and 97CA148. Due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. Id. However, we must independently review whether the trial court properly applied the law to the facts of the case. Id . Furthermore, when reviewing the legal issues presented in a speedy trial claim, an appellate court must strictly construe the relevant statutes against the state. Id., citing Brecksville v. Cook (1996),75 Ohio St.3d 53, 57, 661 N.E.2d 706.
 {¶ 11} Appellant first argues that forty-two days elapsed while appellant was held in jail from January 2, 2002 until January 16, 2002, under the "triple-count" provision of R.C.2945.71(E).[1] Appellant then notes the period January 16, 2002 to February 7, 2002, should count as speedy trial days, despite a pending discovery request. However, we find no merit in this contention. See State v. Brown (2002), 98 Ohio St.3d 121. At this point, neither party disputes that 57 statutory days (19 x 3) should count from February 8, 2002 until February 26, 2002, and that the time should again be tolled until at least November 25, 2002. Appellant next incorrectly contends that the days should run again immediately after our prior decision in the first appeal, filed November 25, 2002. However, speedy trial time continues to be tolled for the period in which a party may appeal to the Ohio Supreme Court. State v. McDonald (Oct. 30, 1998), Washington App. No. 97 CA 49. In this case, the days would thus not run again until January 9, 2003. Appellant would then be entitled to five days from January 9, 2003 until January 14, 2003, when the court granted a continuance for appellant's failure to appear in court. Appellant then requested a continuance on January 15, 2003, due to a trial schedule conflict with his then-counsel. As a result, the trial was set for April 24, 2003.
 {¶ 12} We find the time to be counted for speedy trial purposes is thus 42 + 57 + 5, or 104 days total, well-within the 270-day limit of R.C. 2945.71(C)(2). Therefore, appellant's speedy trial claim is without merit. Appellant's First Assignment of Error is overruled.
 II. {¶ 13} In his Second Assignment of Error, appellant contends the trial court erred in failing to suppress subsequent suspect identifications made by the burglary victim. We disagree.
 {¶ 14} Based on our previous decision, the trial court suppressed the "show-up" identification Sturtz made when appellant was brought back in the cruiser the same day. Nonetheless, "even presuming a pretrial identification procedure is impermissibly suggestive, an in-court identification is permissible where the prosecution establishes by clear and convincing evidence that the witness had a reliable, independent basis for the identification based on prior independent observations made at the scene of the crime." State v. Jenkins,
Cuyahoga App. No. 82622, 2004-Ohio-136, citing State v. Tate,
Cuyahoga App. 81577, 2003-Ohio-1835, and In re Henderson,
Cuyahoga App. No. 79716, 2002-Ohio-483. Moreover, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation but is instead the result of observations at the time of the crime. Id. The "totality of the circumstances" test controls decisions on suppression of identifications, as well as these factors: "[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."State v. Swint, Stark App. No. 2003CA00165, 2004-Ohio-6142, quoting Neil v. Biggers (1972), 409 U.S. 188, 199-200.
 {¶ 15} In the case sub judice, Sturtz was aware that something was amiss as he pulled up to his house and noticed his door standing open. Approximately five minutes passed from the time Sturtz first saw appellant until appellant drove off. The crime and confrontation thus overlapped in this case: Sturtz shouted at appellant to give back his "stuff," obviously aware that a crime was in progress, as opposed to a victim discovering missing items after a stranger has disappeared. Furthermore, Sturtz looked at appellant face-to-face through the truck window in the daylight. Tr. At 118. Sturtz stated the following at trial after he had identified appellant in court: "His hair is shorter; combed. He doesn't have his mustache. He's wearing glasses." Tr. at 122. The prosecutor also had Sturtz recall his earlier in-court identification:
 {¶ 16} "Q. Okay. Now, I want to draw your attention to April 24th of this year. On that date, did you have the occasion to identify the Defendant in a prior Court proceeding related to this case?
 {¶ 17} "A. Yes, I did.
 {¶ 18} "Q. Okay. And were you able to identify him —
 {¶ 19} "A. Yes.
 {¶ 20} "Q. — conclusively at that proceeding?
 {¶ 21} "A. Yes.
 {¶ 22} "* * *
 {¶ 23} "Q. Okay. And now the — when you saw the Defendant that day, did your — the multiple times that you saw him, did that give you a good enough opportunity to remember his face?
 {¶ 24} "A. Oh, yeah." Tr. at 131.
 {¶ 25} We therefore find no error in the allowance of the in-court identification of appellant by Sturtz. Moreover, this was supplemented by police testimony that Sturtz had identified appellant from a photo array the day after the crime. See Tr. at 84. Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 26} In his Third Assignment of Error, appellant contends his conviction for burglary was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.
 Sufficiency {¶ 27} In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: "* * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,273, 574 N.E.2d 492. "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." R.C. 2911.12(A)(2).
 {¶ 28} Appellant essentially argues that the evidence would not support an offense other than trespassing. However, the testimony of Craig Sturtz, the victim, reveals that when he pulled up his driveway, he first noticed his front door wide open, even though he had closed it before leaving that day due to the January temperature. Tr. at 115. He then observed appellant in the bushes, suspiciously appearing to attempt hiding. He noticed his distinctive yellow and black toolbox in appellant's pickup truck, and yelled "give me my stuff back." Appellant specifically noted the toolbox had been inside the house, in the laundry room. Tr. at 130. When questioned about the details of the toolbox, the following exchange took place between Sturtz and the prosecutor:
 {¶ 29} "* * * So, I started walking around the back of the truck, noticed my — a tool box, my tool box, in the back of this truck. I looked at the back license plate, read it off to the dispatcher. From there I pretty much then changed my focus back to where did the guy go.
 {¶ 30} "Q. Okay. This tool box that you saw in the back of the truck, what did it look like?
 {¶ 31} "A. Looked like my tool box. It was yellow and black.
 {¶ 32} "Q. How yellow and black? Checkered?
 {¶ 33} "A. No. It was a black top with a yellow base to it. My wife got it for me. She's a Steeler's fan, and it was — it was a very distinctive yellow and black tool box because of the Steeler —
 {¶ 34} "Q. Okay. Had you seen — prior to that day, other than the tool box your wife got you, had you seen a tool box like that before?
 {¶ 35} "A. No." Tr. at 117.
 {¶ 36} According to Sturtz, after appellant drove off and the 911 call was made, Sturtz detected muddy footprints on his new carpet in the house, and also discovered a laundry basket with items collected from the house, such as several compact discs. Tr. at 122-123.
 {¶ 37} Based on the foregoing, reasonable triers of facts could have found appellant was inside the Sturtz home with the purpose of committing a criminal offense, thereby being guilty of burglary.
 Manifest Weight {¶ 38} In considering an appeal concerning the manifest weight of the evidence, our standard is as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175,485 N.E.2d 717.
 {¶ 39} Appellant specifically contrasts Sturtz's testimony concerning the toolbox with testimony from a pawnbroker, Ann Sullivan, who recalled that appellant had pawned and retrieved "assorted tools in a yellow toolbox" nearly a year prior to the Sturtz burglary. Tr. at 166-167. Appellant also notes that one of the officers remembered Sturtz describing appellant as having collar-length hair, versus a later description of long hair and a mustache. Tr. at 79. Nonetheless, having reviewed the record in the case of sub judice, we are unpersuaded by appellant's contention that the jury's verdict led to a manifest miscarriage of justice. As we have often emphasized, the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212. The jury's verdict was not against the manifest weight of the evidence.
 {¶ 40} Appellant's Third Assignment of Error is therefore overruled.
 {¶ 41} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Licking County, Ohio, is affirmed.
Wise, P.J., Edwards, J., and Boggins, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
Costs to appellant.
[1] The statutory provision reads as follows: "(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section."