JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Quentin Pinchback appeals from his convictions after a jury trial on charges of kidnapping, aggravated burglary, and aggravated robbery, each with a one-year firearm specification, and of carrying a concealed weapon.
 {¶ 2} Appellant challenges his convictions on several grounds. He asserts they are supported by neither sufficient evidence nor the weight of the evidence. He asserts the trial court erred in permitting a prosecution witness to assert his privilege against self-incrimination, in prohibiting defense counsel from further cross-examination of a witness, in refusing to order production of a witness' prior statement, in admitting certain hearsay testimony, and in consenting to the prosecutor's request to call a witness undisclosed to the defense prior to trial. He claims his defense counsel provided ineffective assistance. Finally, he claims the fairness of his trial was compromised by the improper testimony of a witness.
 {¶ 3} Following a thorough review of the record, however, this court finds none of his challenges has merit. Consequently, appellant's convictions are affirmed.
 {¶ 4} Appellant's convictions stem from an incident that occurred on June 9, 2003. The incident had been precipitated by an earlier event: in late May, Richard Horvath III, known by his nickname "Li'l Ritchie" to distinguish him from his father Richard Horvath Senior, had stolen a suitcase full of money from his long-time friend, an alleged drug-dealer named Jarrett Doss.
 {¶ 5} Li'l Ritchie had taken the money for several reasons. Although he had known Doss since they attended junior high school in Virginia together, and Doss was sheltering him in the spring of 2003, Li'l Ritchie in December 2002 had spoken to a federal Drug Enforcement Agency ("DEA") representative in Virginia about Doss' illegal activities; he realized Doss was suspicious of him and that he was in danger if Doss discovered the betrayal. L'il Ritchie's family members were persons of limited means. Additionally, when the opportunity to steal the money presented itself, he could not resist the temptation.
 {¶ 6} He fled with the money from Atlanta, where he had been staying with Doss, to Cleveland, where his father and aunt, Crystal Szell, lived. Upon his arrival in this area, he began a spending spree. The spree extended to his friends and family. With their help, Li'l Ritchie purchased a Mercedes-Benz automobile; he also gave his father enough cash to purchase a motorcycle and repaid a debt to Szell.
 {¶ 7} His carelessness, however, attracted attention. Thus, Doss easily learned of it by contacting people in the Cleveland area whom he knew through Li'l Ritchie. One of these was Michael Saler who was close to the Horvath family: he had been working for Szell, and he was the brother of Terry Butcher, who for years had been Richard Horvath Senior's girlfriend.
 {¶ 8} Doss' telephone contact with Saler was preceded by a frightening incident. On the evening of June 7, 2003, Saler was walking Butcher from her apartment to his car when they were accosted from behind by several men. One of the men placed his arm around Saler's neck, and the "next thing [he knew], [he's] laying on the floor of a van with a gun shoved in [his] mouth." While Saler and Butcher were helpless, they were told by their assailants that "Ritch stole some money," that the men were "up here looking for him, and they [were] going to find him and anybody with him is going to get whacked."
 {¶ 9} Although the assailants quickly left, Saler received a telephone call from Doss the following morning. He agreed with Doss that, in exchange for his own and Butcher's safety, he would cooperate with Doss' men in their search for Li'l Ritchie. Saler was instructed to meet with Doss' men the next day at a motel near the airport.
 {¶ 10} Saler arrived at the motel at the appointed time on June 9, 2003 and proceeded to the room number he had been given. Once inside, he saw four men loading cartridges into guns. The men placed the guns into the waistbands of their pants before covering them with their shirts. Saler later identified the men as appellant Quentin Pinchback and co-defendants Curtis Gregory, Carl West, and Rontae Perkins. Perkins seemed to have been the leader.
 {¶ 11} As ordered, Saler drove the men's van for them around the neighborhoods in which Li'l Ritchie could be found. He stopped once during the excursion, because Perkins stated they "needed some duct tape and some rope." After Perkins had obtained the items, Richard Horvath Senior passed the van in the opposite direction. Li'l Ritchie's father was known to Doss' men, so sighting him lent credence to Saler's cooperation. Saler returned the men to the motel, but was told to come back in two hours.
 {¶ 12} At approximately 4:00 p.m., while Saler remained seated in his car in the motel parking lot, the van stopped, and the men exited it to speak with him. Perkins informed him the "plan" was to "get into [Szell's] house," so they could "tie up" Szell and force Li'l Ritchie to come there. Saler indicated he would have no trouble gaining admission, since he and Szell were friends. He told the men to follow him to her condominium.
 {¶ 13} Upon their arrival in the neighborhood, the men waited in the van while Saler entered Szell's home to "scout" the situation. Szell admitted Saler, but told him she and her daughter, fourteen-year old "T," were leaving soon to eat out. Thus, after a short visit, Saler left when they did.
 {¶ 14} Saler immediately met with Doss' men in a nearby parking lot to tell them Szell's home currently was empty and where she kept a spare key. Perkins decided to take advantage of this development; he instructed Saler to drive the van, drop them off at Szell's, then return for them upon his signal. Saler obeyed.
 {¶ 15} After a time, Szell arrived back at her home to retrieve some videotapes she wanted to return. T volunteered to go inside for them while Szell waited in the car.
 {¶ 16} T entered through the garage to find the hallway strewn with papers and clothing. Unsettled, she looked into the laundry room and there she saw a man she later identified as appellant. He stood against the dryer, arms crossed, with a gun in one of his hands. Appellant glanced in her direction; when his eyes met with T's, she fled out the garage door.
 {¶ 17} T ran into the driveway screaming, "They have guns!" Szell had heard the screams and had exited the car, but she remained unsure of what was occurring, so she simply stood in the driveway while T continued her flight to a neighbor's nearby condominium to telephone the police. Thus, Szell was in a position to see when two men ran out of her home. She later identified the men as appellant and his co-defendant Carl West.
 {¶ 18} Seeing Szell, West pointed the gun he carried wrapped in a white towel at her, pushed it into her stomach, and ordered her to get inside. Szell put her hands up and began backing away from the weapon. T observed this from the window of the neighbor's; T further saw appellant glancing around as if searching for her, so she ducked out of sight.
 {¶ 19} Saler had by this time received the summons to return for Doss' men. He approached Szell's home to see the men running toward the van "from everywhere." When he came near, one jumped into the rear passenger seat while the other opened the sliding door; appellant and West also leapt inside. Saler was urged to "go, go, go." As he pulled away, he saw Szell, obviously agitated, standing in her driveway with her cellular telephone in hand
 {¶ 20} Saler's subsequent efforts to elude the police proved futile. Within a short time, he was forced to stop the van, and, although all the men inside attempted to flee on foot, all were captured.
 {¶ 21} Within a week, appellant, Perkins, West, Gregory, and Saler were together indicted on a total of twenty counts. Twelve of them pertained to appellant, viz., two counts of conspiracy to commit aggravated murder, two counts of kidnapping, two counts of aggravated burglary, two counts of aggravated robbery, two counts of felonious assault, one count of failure to comply with the signal or order of a police officer, and one count of carrying a concealed weapon; all except the latter two counts contained both a three-year and a one-year firearm specification.
 {¶ 22} Saler eventually entered into a plea agreement with the state and testified as a prosecution witness at the jury trial of his co-defendants. Among many others, the state additionally presented as witnesses the Horvaths, Szell, T, Butcher, some of the police officers involved, and an agent of the Federal Bureau of Investigation ("FBI").
 {¶ 23} The jury ultimately found appellant guilty of one count of kidnapping, two counts of aggravated burglary, two counts of aggravated robbery, all with one-year firearm specifications, and one count of carrying a concealed weapon. He received a total sentence of seven years for these convictions.
 {¶ 24} Appellant appeals his convictions by presenting nine assignments of error for review. Logically, his third, fourth, fifth, sixth, seventh, and ninth initially should be addressed, and they are set forth as follows:
 {¶ 25} "III. The trial court erred by allowing a key witness to assert his Fifth Amendment right against self-incrimination, thus depriving Appellant of his right to confrontation under the Ohio Constitution and the U.S. Constitution, thus denying Appellant of his right to a fair trial.
 {¶ 26} "IV. The trial court erred when it refused defense counsel the right to cross-examine a key identification witness on material inconsistencies in her written statement.
 {¶ 27} "V. The trial court erred by refusing to order the county prosecutor and/or the DEA to turn over a statement of a key witness of the State, thus denying Appellant of his right to confrontation under the Ohio Constitution and the U.S. Constitution, thus denying Appellant his right to a fair trial.
 {¶ 28} "VI. The trial court erred when it continuously allowed the state to introduce hearsay testimony in violation of Evid.R. 802, thus denying Appellant his right to a fair trial.
 {¶ 29} "VII. The trial court erred when it allowed a witness to testify who (sic) the State did not disclose in its written discovery in violation of Criminal Rule 16, thus denying Appellant his right to a fair trial.
 {¶ 30} "IX. Appellant was denied a fair trial by the FBI agent's improper comments while testifying."
 {¶ 31} In all of these assignments of error, appellant challenges certain evidentiary rulings made by the trial court. However, the trial court's decisions to admit or to exclude evidence are reviewed pursuant to an abuse of discretion standard. State v. Soke (1995), 105 Ohio App.3d 226. A review of the record of this case fails to support a conclusion any abuses of discretion occurred.
 {¶ 32} Appellant initially complains his constitutional right to confront the witnesses against him unreasonably was curtailed during Li'l Ritchie's cross-examination. Co-defense counsel at one point attempted to gain details from Li'l Ritchie about the services, which likely were illegal, that he rendered to Doss during the time of their association. This inquiry was halted when the trial court accepted Li'l Ritchie's refusal to answer.
 {¶ 33} The trial court's decision will not be reversed for two reasons. First, the Ohio Supreme Court has held that a jury "may not consider [a witness'] invocation of the privilege against self-incrimination for any purpose." Columbus v. Cooper
(1990), 49 Ohio St.3d 42, 47. This clearly includes purposes of impeachment.
 {¶ 34} Second, the extensive cross-examinations of Li'l Ritchie by each defense counsel thoroughly and completely impeached Li'l Ritchie's credibility on the subject, thus accomplishing appellant's intended purpose. State v. Jenkins,
Cuyahoga App. No. 82622, 2004-Ohio-136.
 {¶ 35} Appellant also complains the trial court refused to permit him to cross-examine T regarding "inconsistencies" between her identification of him during her testimony and her description of him in her written statement. The record, however, reflects the trial court determined no material inconsistencies existed between T's written statement and her testimony; instead, the issue was whether T's earlier description coincided with appellant's actual appearance. The trial court permitted appellant to examine T in this respect, thus, appellant's complaint is baseless. Crim.R. 16(B)(1)(g).
 {¶ 36} Appellant further asserts the trial court erred in denying his request for an order to the Virginia DEA agent to produce any of Li'l Ritchie's December 2002 statements. However, appellant's assertion lacks any citation to specific legal authority in support of it. Pursuant to App. R. 12(A)(2) and 16(A)(7), therefore, this court declines to address it.
 {¶ 37} For similar reasons, the argument appellant presents in his sixth assignment of error also is rejected. Appellant claims "instances of hearsay testimony are too numerous to mention specifically." This court has no obligation to consider an error cast in such terms. Cleveland v. Austin (1978),55 Ohio App.2d 215, 230.
 {¶ 38} Next, appellant contends that since the record reveals the state failed to comply with the requirements of Crim.R. 16(B)(1)(e), the trial court acted improperly when it nevertheless permitted Officer Chad Cramer to testify at trial.
 {¶ 39} Appellant's contention cannot be considered persuasive for the following reasons: 1) the trial transcript demonstrates the state's omission was inadvertent rather than intentional; 2) the defense attorneys earlier had become aware of the substance of Cramer's testimony, thus, they were not unprepared for the evidence; 3) the trial court limited Cramer's testimony due to the state's failure to comply with the letter of Crim.R. 16(B)(1)(e); and, 4) Cramer's testimony, so limited, was incidental to the issue of guilt.
 {¶ 40} Under these circumstances, the trial court did not abuse its discretion in this matter. State v. Parson (1983),6 Ohio St.3d 442, 445; State v. Czajka (1995),101 Ohio App.3d 564, 572; State v. Brown (1993), 85 Ohio App.3d 716, 720.
 {¶ 41} Lastly, appellant argues the fairness of his trial was tainted by certain comments made by the FBI agent during his testimony. Specifically, the agent occasionally questioned the truthfulness of some of the oral statements appellant gave after his arrest. Appellant took it upon himself, however, to cross-examine the FBI agent on his opinion of appellant's veracity, thereby waiving this argument. State v. Williams
(1977), 51 Ohio St.2d 112.
 {¶ 42} Based upon the foregoing analysis, appellant's third, fourth, fifth, sixth, seventh and ninth assignments of error are overruled.
 {¶ 43} Appellant's first and second assignments of error state:
 {¶ 44} "I. The trial court erred in denying Appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence that Appellant committed these crimes.
 {¶ 45} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 46} Appellant argues his convictions are supported by neither sufficient evidence nor the weight of the evidence presented at trial. He therefore contends that the trial court should have granted his motions for acquittal and that his convictions should be reversed. This court disagrees.
 {¶ 47} Pursuant to Crim.R. 29(A), a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether the material elements of a crime have been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261. The evidence must be viewed in a light most favorable to the prosecution. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372.
 {¶ 48} With regard to an appellate court's function in reviewing the weight of the evidence, it must be determined from the entire record that in resolving conflicts in the evidence, the jury "clearly lost its way" and created" a manifest miscarriage of justice;" cases in which this occurs are "exceptional." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. Thus, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily reserved for the jury. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 49} In this case, Saler testified appellant was among the four men he met at the motel. He saw them all load their guns and place them into their waistbands, under their shirts. Appellant was with the others inside the van as Saler drove it in his quest to locate Li'l Ritchie. Appellant also was among the men whom Saler left at Szell's home.
 {¶ 50} T testified appellant was the man she saw in the laundry room of the house, which had been "ransacked" between the time she and her mother left and the time they returned for the videotapes. She saw that appellant carried a gun before she fled.
 {¶ 51} Szell testified her home obviously had been searched for money, since drawers were opened and dumped in nearly all of the rooms. She further testified that an envelope in which she kept $1600 was missing after the incident. She identified appellant as West's companion when West pointed his gun at her, placed it at her stomach and ordered her to go into the house with them. Her testimony was corroborated by T, who watched this happen from her neighbor's window. Upon his capture, appellant was carrying over $2100 in cash.
 {¶ 52} The evidence thus proved that appellant acted along with his co-defendants in first concealing his weapon, then later, when Szell and T were out, he entered the home, gun in hand, with the intent to appropriate any money he found. The women's unexpected return forced appellant and his cohorts to flee, but as they were doing so, appellant and West encountered Szell. West pointed his gun at Szell, preventing her from seeking safety before the men completed their escape in the van.
 {¶ 53} From the foregoing, a reasonable mind could conclude beyond a reasonable doubt that appellant committed the crimes of aggravated robbery in violation of R.C. 2911.01(A), aggravated burglary in violation of R.C. 2911.11(A), kidnapping in violation of R.C. 2905.01(A), and carrying a concealed weapon in violation of R.C. 2923.12. Appellant's convictions, therefore, were based upon sufficient evidence.
 {¶ 54} The jury also acted within its prerogative to believe the testimony of the many state witnesses rather than appellant's evidence. Appellant gave an oral statement after his arrest, in which he admitted driving around in the van with Saler and his Virginia co-defendants, but denied participating in any plot. Appellant, further, gave the FBI agent an outlandish explanation for his presence in the Cleveland area. Consequently, appellant's convictions also find support in the weight of the evidence.
 {¶ 55} Appellant's first and second assignments of error are overruled.
 {¶ 56} Appellant's eighth assignment of error states:
 {¶ 57} "VIII. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article 1, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to file a motion to suppress."
 {¶ 58} Appellant argues his trial counsel was ineffective for his failure either to file a motion to suppress the identification evidence obtained at his arrest or to challenge the admission of the identification evidence. Appellant's argument is unpersuasive.
 {¶ 59} In Ohio, a properly licensed attorney is presumed competent. State v. Smith (1985), 17 Ohio St.3d 98. One claiming ineffective assistance of counsel bears the burden of demonstrating the fol-lowing: viz., (1) there has been asubstantial violation of an essential duty owed to him by counsel, and (2) he has been thereby prejudiced. State v. Lytle
(1976), 48 Ohio St.2d 291; State v. Bradley (1989),42 Ohio St.3d 136, citing Strickland v. Washington (1984),466 U.S. 668; see, also, State v. Smith, supra.
 {¶ 60} This court will not second-guess what could be considered to be a matter of trial strategy. Id. Moreover, the establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph three of the syllabus. The record of this case with regard to trial counsel's actions fails to demonstrate his performance fell below an objective standard of reasonableness.
 {¶ 61} Defense counsel is not required to file a motion to suppress in every case. State v. Flors (1987),38 Ohio App.3d 133, headnote 2. In view of the testimony that appellant and the others were caught within minutes of their attempts to flee on foot, and the opportunities that Szell and T had to view appellant and West, it is clear the filing of a motion to suppress evidence gained as a result of appellant's arrest would have been fruitless. State v. Gibson (1980), 69 Ohio App.2d 91,95. Counsel cannot be deemed ineffective for failing to file a motion to suppress when there is no justification for one; therefore, appellant cannot sustain his burden to prove counsel violated an essential duty to him on this basis. Id.; State v.Flors, supra; State v. Tart (June 8, 2000), Cuyahoga App. No. 76223; cf., State v. Garrett (1991), 76 Ohio App.3d 57.
 {¶ 62} Furthermore, the record demonstrates the identifications of appellant by Szell and T at trial were positive and were based upon their observations made at the time of the incident. Defense counsel, therefore, would have had no cause to raise any objections to their in-court identifications of appellant. State v. Peterson (Aug. 15, 2002), Cuyahoga App. No. 80606.
 {¶ 63} The record reveals that trial counsel, rather than providing ineffective assistance, was fully prepared, capable, and diligent in his advocacy of his client. Consequently, appellant cannot sustain his burden with respect to his claim.State v. Bradley, supra.
 {¶ 64} Appellant's eighth assignment of error, accordingly, also is overruled.
 {¶ 65} Appellant's convictions are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Couty of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J. Concurs.
 Kilbane, P.J. Concurs in Judgment only.