JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals his conviction after a jury found him guilty on one count of burglary, in violation of R.C. 2911.12(A)(1).[1] He also appeals the trial court's determination that he is a repeat violent offender.
 {¶ 2} On May 20, 2003, Rita Byron's home in Shaker Heights, Ohio was burglarized. When the burglary occurred, Byron was preparing for her upcoming move to Florida. On the 20th, Byron and friend, Charlene Doerle, were at Byron's home talking with two women who wanted to purchase fur coats Byron was selling.
 {¶ 3} While the women talked, Byron looked for a box from behind her couch. There she discovered an intruder hiding behind the couch. When Byron screamed, the intruder jumped up and fled the house, and the police were called. A short time later, police arrested defendant, who matched Byron's description of the man hiding in her home.
 {¶ 4} Following his conviction, defendant filed this timely appeal in which he asserts the following assignments of error:
I. The trial court erred when it failed to dismiss the elements of "deception" and "force" from the burglary indictment, thereby allowing the jury to consider these alternate forms for the commission of the burglary alleged in count one even when there was no evidence supporting these forms of the offense.
 {¶ 5} Defendant argues the trial court erred by failing to limit the burglary charge when he made his Crim.R. 29 motion for acquittal of the case. Defendant argues there was not sufficient evidence of "force" and "deception."[2] The verdict, he argues is, therefore, "suspect" because the jury was given an improper instruction which included the elements of "force" and "deception." Rather, he argues, the court should have limited the charge to burglary by stealth.[3]
 {¶ 6} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v. Watts, Cuyahoga App. No. 82601,2003-Ohio-6480, citing State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492. "Sufficiency is a test of adequacy." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386-387, 1997 Ohio 52, 678 N.E.2d 541.
 {¶ 7} First, we note that when defendant in the case at bar made his Crim.R. 29 motion, he did not request that the court dismiss any disjunctive elements of the burglary offense. Instead, his motion was a general request for acquittal because he was mistakenly identified as Byron's burglar. Tr. 407.
 {¶ 8} Because the substance of defendant's Crim.R. 29 motion in the trial court varies from what he argues here on appeal and because he never objected to the court's instructions, he has waived all but plain error.[4] State v. Barbee, Cuyahoga App. no. 82868, 2004-Ohio-3126, at ¶ 69, citing State v. Nobles, Cuyahoga App. No. 79264, 2002-Ohio-667;State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. "Plain error exists when but for the error the outcome of the trial would have been different." Id., citing Nobles, at *6 and *7, citing State v. Moreland
(1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.
 {¶ 9} In order to prove the offense of burglary, the state had to prove defendant, "by force, stealth, or deception," trespassed into "an occupied structure" "with purpose to commit * * * a criminal offense." R.C. 2911.12(A)(1). When the means by which an offense is committed are listed disjunctively in a criminal statute — any one of them may serve as the material element to be proven by the state. State v. Bell, (Jan. 31, 1994), Butler App. No. CA93-07-143.
 {¶ 10} In the case at bar, the court's instruction is, in part, as follows:
 {¶ 11} Before you can find the defendant guilty, you must find, beyond a reasonable doubt, that on or about the 20th day of May, 2003, in Cuyahoga County, Ohio, the defendant, by force, stealth, or deception, trespassed in an occupied structure * * *.
 {¶ 12} Tr. 473.
 {¶ 13} According to defendant, because the court instructed the jury on force and deception, for which there was no supporting evidence, there is a possibility that he was convicted on an element not proven beyond a reasonable doubt by the state. As a result, defendant argues, his conviction by a less-than-unanimous jury violates his Sixth Amendment right to a trial by jury.
 {¶ 14} Defendant relies on Jackson v. Virginia (1979), 443 U.S. 307, for the proposition that a jury can consider only those elements of a crime for which there is sufficient evidence. We note, first, that Jackson was tried to the bench, so the question was not what was sent to the jury. In Jackson, moreover, defendant argued that he was convicted of first degree murder upon inadequate evidence, particularly of having intended, that is, having premeditated the murder of his victim.[5]
Disagreeing, the court concluded that the manner in which the victim was murdered could have permitted a rational fact finder to conclude that defendant had premeditated his victim's murder beyond a reasonable doubt under Virginia law. In Jackson, the disjunctive elements of the crime were not at issue, as they are in the case at bar. The only question before the Court was whether there was sufficient evidence that defendant premeditated the victim's murder.
 {¶ 15} In the case at bar, defendant argues more specifically that there was insufficient evidence of force or deception and, therefore, the court erred in instructing the jury on these elements. Defendant explains that because the jury instruction presents the elements of "force, stealth or deception" disjunctively, there is no way to determine from a general verdict which one of the statutes' stated elements the jury used in deciding his guilt. Further, because there is a possibility that the jurors were not unanimous in deciding how defendant committed the burglary, the verdict is invalid, according to defendant.
 {¶ 16} Jackson, did not specifically address the unanimity argument presented by defendant herein, however. For that issue, defendant relies on Carella v. California (1989), 491 U.S. 263, 109 S.Ct. 2419,105 L.Ed.2d 218, in which the United States Supreme Court determined that the trial court's jury instructions violated the defendant's rights to due process. In Carella, defendant was convicted of grand theft for failing to return a rental car. At the end of trial, the district court instructed the jury according to two separate motor vehicle laws. The court's instructions were as follows:
 Presumption Respecting Theft by Fraud: {¶ 17} Intent to commit theft by fraud is presumed if one who has leased or rented the personal property of another pursuant to a written contract fails to return the personal property to its owner within 20 days after the owner has made written demand by certified or registered mail following the expiration of the lease or rental agreement for return of the property so leased or rented.
 {¶ 18} (2) Presumption Respecting Embezzlement of a Leased or Rented Vehicle:
 {¶ 19} Whenever any person who has leased or rented a vehicle wilfully and intentionally fails to return the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle.
 {¶ 20} Id., at 264. The United States Supreme Court determined that these instructions improperly relieved the government of its burden of proving each essential element of the crime charged against defendant. The Court explained:
Carella's jury was told first that a person "shall be presumed to have embezzled" a vehicle if it is not returned within 5 days of the expiration of the rental agreement; and second, that "intent to commit theft by fraud is presumed" from failure to return rented property within 20 days of demand.
These mandatory directions directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses with which Carella was charged. The instructions also relieved the State of its burden of proof articulated in Winship,
namely, proving by evidence every essential element of Carella's crime beyond a reasonable doubt. The two instructions violated theFourteenth Amendment.
Id., at 266.
 {¶ 21} In the case at bar, the jury was instructed as follows:
THE COURT: * * * Before you can find the defendant guilty, you must find, beyond a reasonable doubt, that on or about the 20th day of May, 2003, * * * the defendant, by force, stealth, or deception, trespassed in an occupied structure, * * *.
Force means any violence, compulsion effort or constraint exerted or used by any means upon or against a person or thing to gain entrance.
Stealth means any discreet or sly act to gain entrance. Deception means knowingly deceiving another, or causing another to be deceived by any false or misleading representation by withholding information, by preventing another from acquiring information, or by any other conduct or act that creates, confirms, or perpetuates a false impression as to law, value, state of mind, or other objective or subjective fact.
Tr. 473-474.
 {¶ 22} The trial court in this case correctly instructed the jurors what the elements were and that they could find one, both, all three elements, or none of them. The trial court did not give the jury any instruction that included a mandatory conclusive presumption as inCarella, and we see no reason to expand Carella beyond those facts.
 {¶ 23} In different language, defendant is making the same argument presented in Griffin v. United States, (1991) 502 U.S. 46, 112 S.Ct. 466,116 L.Ed.2d 371. In Griffin, defendant was charged with conspiring to defraud a federal government agency. The conspiracy offense is codified in 118 U.S.C. § 371, which, in part, reads as follows:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be [guilty of a crime].
 {¶ 24} "The unlawful conspiracy was alleged to have had two objects: (1) impairing the efforts of the Internal Revenue Service (IRS) to ascertain income taxes; and (2) impairing the efforts of the Drug Enforcement Administration (DEA) to ascertain forfeitable assets." Id., at 47.
 {¶ 25} At trial, the evidence supported defendant's involvement only in the first object of the conspiracy, namely, the IRS. At the end of her trial, defendant requested that the jury be instructed only on the IRS part of the conspiracy charge. That request was denied. Defendant then made two other requests: an instruction that would allow the jury to convict her only if there was evidence that she was aware of the IRS part of the charge and a special interrogatory which asked the jury to specifically "identify the object or objects of the conspiracy of which she had knowledge." Id. These requests were denied as well.
 {¶ 26} When the jurors in Griffin were given their instructions, the court instructed them that they could find her guilty on either one of the two objects of the conspiracy, namely, impairing the efforts of either the IRS or the DEA. Defendant was found guilty under the jury's general verdict.
 {¶ 27} On appeal, the Supreme Court reviewed the validity of "the jury's general verdict under a single count charging the commission of an offense by two or more means." Id. In affirming defendant's conviction, the Court explained as follows:
 {¶ 28} The precedent governing this case is * * * Turner v.United States, 396 U.S. 398, 420, 24 L.Ed.2d 610, 90 S.Ct. 642, which upheld a general verdict when one of the possible bases of conviction was supported by inadequate evidence. * * * Jurors * * * are well equipped to determine whether the theory is supported by the facts. Although it would generally be preferable to give an instruction removing from the jury's consideration an alternative basis of liability that does not have adequate evidentiary support, the refusal to do so does not provide an independent basis for reversing an otherwise valid conviction.
 {¶ 29} Id., at syllabus.
 {¶ 30} We agree that it would be better if the trial court removed, from instructions that define the elements of a crime, any disjunctive parts that do not have adequate evidentiary support. However, followingGriffin, we find no basis to set aside a general guilty verdict solely because the jury was given an instruction for the commission of a crime by alternative means.
 {¶ 31} Only months before the decision in Griffin, the Court decidedSchad v. Arizona, (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555, which is also instructive in the case at bar. Schad, a plurality opinion, involved a defendant who was convicted of first-degree murder. At trial, the prosecutor presented two different theories of how the murder occurred: by premeditation or in the commission of a felony. The trial court gave the jury a general instruction about unanimity. It did not, however, instruct the jury that if it found defendant guilty, it had to determine which one of the prosecutor's two theories of guilt was implicated by the evidence.
 {¶ 32} In affirming defendant's conviction, the Court stated as follows:
 {¶ 33} We have never suggested that in returning general verdicts in [cases proposing multiple theories] the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict."
Id. at 631-632, 111 S.Ct. 2491, 115 L.Ed.2d 555, quoting McKoy v. N.Carolina (1990), 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369
(Blackmun, J., concurring); see State v. Skatzes, 104 Ohio St.3d 195,2004-Ohio-6391, 819 N.E.2d 215.
 {¶ 34} From the U.S. Supreme Court opinions in Griffin and Schad, we conclude that the trial court did not err in denying defendant's Crim.R. 29 motion and then including in its jury instructions the disjunctive elements of force, stealth, and deception. Because defendant does not dispute that the element of stealth was proven by the state, we find no error, plain or otherwise.
 {¶ 35} Accordingly, this assignment of error is overruled.
The trial court erroneously found mr. sims to be a repeat violent offender and thus erroneously believed itself bound to impose a mandatory prison sentence.
 {¶ 36} Defendant contends the trial court erred by finding him to be a repeat violent offender. He argues that without the repeat violent offender specification, he could have been given probation rather than a mandatory prison term.
 {¶ 37} R.C. 2929.01(DD) defines a repeat violent offender as follows:
 {¶ 38} "Repeat violent offender" means a person about whom both of the following apply: (1) The person has been convicted of * * * a felony of the first degree * * * a felony of the second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person. (2) * * * the following applies: (a) The person previously was convicted of or pleaded guilty to, and previously served * * * a prison term for * * * (i) * * * a felony of the first or second degree that resulted in the death of a person or in physical harm to a person * * *.
 {¶ 39} Defendant maintains that the state failed to meet the two-part criteria set forth in R.C. 2929.01(DD) in order to prove that he is a repeat violent offender. That section of the statute provides, in part, as follows:
 {¶ 40} (DD) "Repeat violent offender" means a person about whom both of the following apply:
The person has been convicted of or has pleaded guilty to, and is being sentenced for committing, for complicity in committing, or for an attempt to commit, aggravated murder, murder, involuntary manslaughter, a felony of the first degree other than one set forth in Chapter 2925. of the Revised Code, a felony of the first degree set forth in Chapter 2925. of the Revised Code that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person, or afelony of the second degree that involved an attempt to cause seriousphysical harm to a person or that resulted in serious physical harm to aperson.
Either of the following applies:
The person previously was convicted of or pleaded guilty to, and previously served or, at the time of the offense was serving, a prison term for, any of the following:
Aggravated murder, murder, involuntary manslaughter, rape, felonious sexual penetration as it existed under section 2907.12 of the Revised Code prior to September 3, 1996, a felony of the first or second degreethat resulted in the death of a person or in physical harm to a person,or complicity in or an attempt to commit any of those offenses; * * *. (Emphasis added.)
 {¶ 41} Defendant argues that the state failed to prove that he caused or attempted to cause Byron serious physical harm. He further argues that the state never proved that his prior convictions for aggravated burglary and aggravated robbery involved serious physical harm. We agree.
 {¶ 42} The record in this case fails to show any evidence that defendant caused or attempted to cause serious physical harm in the instant case or in either of his prior convictions. Defendant, therefore, cannot be classified as a repeat violent offender and that designation is hereby vacated. Accordingly, we sustain defendant's second assignment of error.
 {¶ 43} We are compelled to consider, sua sponte, a procedural irregularity recently discussed in Blakely v. Washington, (2004),124 S. Ct. 2531, 159 L.Ed.2d 403,[6] in which the United States Supreme Court determined that a sentencing statute in the State of Washington was unconstitutional under the following circumstances. In Blakely, the facts petitioner admitted in his guilty plea supported a maximum sentence of only 53 months. At sentencing, however, "the trial judge imposed a 90-month sentence after finding that petitioner had acted with deliberate cruelty, a statutorily enumerated ground for departing from the standard range." Id. The Court determined that this sentencing scheme violated petitioner's Sixth Amendment right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. The Court further explained:
In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," Bishop, supra, ¶ 87, at 55, and the judge exceeds his proper authority.
Id., at 2537, 159 L.Ed.2d 414.
 {¶ 44} We acknowledge that the trial court in the case at bar did not have the benefit of the Blakely decision to guide it. Nonetheless, the court bifurcated the repeat violent offender specification. After defendant was convicted for burglary, the court held a separate hearing in which the following statements were made:
THE COURT: Then with respect to the repeat violent offender specification, which is sufficiently proven by a certified copy of the conviction record, which I have in my hand, certified by the Clerk of Court, Gerald Fuerst, case 258623 on January 29, 1991, indicates that Mr. Sims pled guilty to aggravated robbery and aggravated burglary, following which he was sentenced to the institution by Judge Paul Matia, and entered in the records February 4, 1991.
I believe this is sufficient to prove the violent offender specification by definition, and the Court so finds he is the same Curtis Sims that was convicted of those offenses on that date.
* * *
[PROSECUTOR]: It isn't necessary for the Court to understand the violence that may or may not have occurred in the prior in determining whether — what the appropriate sentence is, your Honor. That's my understanding. It is, perhaps, but I defer to the Court.
THE COURT: Only if I want to entertain it, because if I'm going to give him the maximum, it only applies.
* * *
I'm not at this time going to give him the maximum. That's not in my head. Otherwise, yes, I would need to hear that in order to justify the max.
* * *
I will indicate for the record, Mr. Sims, that the repeat violentoffender specification, having been found, does make the sentencemandatory from the underlying offense.
 * * * Mandatory means I'm going to sentence you to prison. Do you understand? No probation. Do you understand?
THE DEFENDANT: Yes.
* * *
THE COURT: * * * Mr. Sims, you know that you have a right to appeal. We are going to move right into sentencing, and on this burglary the Court imposes a sentence of three years * * *.
Since the Court did not impose the maximum, the repeat violent offender spec possibility is not going to be imposed. (Emphasis added.)
Tr. 494-499.
 {¶ 45} On this record, we find merit in defendant's argument that the state did not prove to the jury that he was a repeat violent offender. Because the specification was part of defendant's indictment, the state had to prove each of the statutory elements of that specification to the jury beyond a reasonable doubt. Instead, the proceedings were bifurcated and the jury did not hear or see any evidence about defendant's criminal record. Contrary to Blakely, therefore, the jury did not determine whether defendant was a repeat violent offender. The trial court made this determination on its own.
 {¶ 46} And even though the trial court refrained from imposing a maximum term of incarceration, it nonetheless used the repeat violent offender specification to support its imposition of a mandatory prison term rather than probation. The specification, therefore, served as an enhancement for an offense that does not always carry a mandatory term of incarceration.
 {¶ 47} From the foregoing analysis and after applying the decision inBlakely, we conclude that the repeat violent offender specification was improperly applied as an improper penalty enhancement for defendant's burglary conviction. Accordingly, we sustain this assignment of error and, in doing so, we vacate defendant's entire sentence.
Evidence of mr. sims' refusal to provide a written statement was improperly introduced in violation of Mr. Sims' constitutional right to post-arrest silence.
 {¶ 48} Defendant argues that the trial court erred by allowing his post-arrest silence into evidence in violation of Miranda v. Arizona,
(1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Miranda precludes the substantive use of a defendant's silence during police interrogation to prove his guilt. Because defendant did not object to the testimony about his post-arrest silence, we review the admission of that evidence under a plain error standard. State v. Gooden, Cuyahoga App. No. 82621,2004-Ohio-2699. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." Id., at 49 citing State v. Moreland (1990), 50 Ohio St.3d 58,552 N.E.2d 894.
[A]dmitting evidence of post-arrest silence in a manner that implicitly suggests a defendant's guilt is impermissible. As recognized by this court, "the Miranda decision precludes the substantive use of a defendant's silence during police interrogation to prove his guilt." However, as the Ohio Supreme Court has recognized, "where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt."
 {¶ 49} Id., at ¶ 54, citing State v. Correa, (May 15, 1997), Cuyahoga App. No. 70744, 1997 Ohio App. LEXIS 2076, and State v. Williams (1983),6 Ohio St.3d 281, 452 N.E.2d 1323. See Doyle v. Ohio (1976), 426 U.S. 610,49 L.Ed. 2d 91, 96 S.Ct. 2240.
 {¶ 50} In the case at bar, Detective Lamielle interviewed defendant after he was arrested. Lamielle testified that defendant admitted sneaking into Byron's home to steal money he felt Byron owed him. On direct examination, Lamielle explained what defendant did after he admitted being in Byron's house:
Q: Okay. Did you then indicate that you wanted to reduce this conversation to writing?
A: Yes. It's typically my practice to either ask them to place it in writing, or have a secretary transcribe their statement for them so they can read it and sign it.
In this particular case he said that telling me was enough.
* * *
Q: After he refused to sign the statement, the written statement, what occurred then?
A: I returned him to his jail cell.
 {¶ 51} Tr. 395-397.
 {¶ 52} Clearly, the state erred in unnecessarily characterizing defendant's response as refusing to sign the written statement. In fact, there was no need to summarize what the Detective said — much less to characterize it as he did.
 {¶ 53} In State v. Ervin, Cuyahoga App. No. 80473, 2002-Ohio-4093, however, this court held that "a single isolated reference to [defendant's] post-arrest silence is not reversible error." In Ervin,
defendant was convicted of rape and attempted rape. On direct examination, the state questioned Detective Lessman, the police officer who arrested defendant. When asked about defendant's willingness to initially speak with him about the rape charges, Lessman testified that defendant refused to discuss anything with him. On appeal, this court found no reversible error in allowing Lessman's single reference to defendant's post-arrest silence because
The State did not use the witness' post-silence comment in any prejudicial manner. The State did not use defendant's post-arrest silence for impeachment purposes in cross-examination or in closing argument. The State did not make evidentiary use of defendant's silence as evidence of defendant's guilt. In fact, defendant's post-arrest silence was never mentioned again in any context throughout the trial.
Id., at ¶ 65.
 {¶ 54} In light of all the evidence, we conclude that Lamielle's comment about defendant's post-arrest refusal to make a written statement was an isolated remark. As in Ervin, the state did not use defendant's post-arrest silence to prove his guilt. Even though defendant took the stand, his post-arrest silence was not used to impeach him. During trial, the state never referred to Lamielle's comment about refusing to sign a written statement.
 {¶ 55} Moreover, there is an independent and substantive basis to support the trial court's verdict of guilty beyond a reasonable doubt. The record supports defendant's conviction for burglary by stealth[7]
beyond a reasonable doubt.
 {¶ 56} At trial, Byron testified that before she discovered the intruder, she was upstairs on her computer when she heard a noise. She yelled out for Doerle, but no one answered. She was checking other rooms on the second floor when Doerle called up to her about two women wanting to see the fur coats she was selling.
 {¶ 57} Byron described the events after she went downstairs:
I was in the center hall, because there is a mirror on our door. Seems to me we were sort of in that area just entering the living room. I think they were trying them on and we were discussing the fur coats.
And one woman said it was not fur, and I said, I have those, also, and that I have scrapbooks of pictures where I model them for the Love Boat. And I said, "I have pictures here on the floor and I will show them to you."
They were on the floor at the end of a couch awaiting for the movers who were arriving in a couple of days. They were there, and I bent down to pick them up off the floor.
* * *
They were a little behind the couch, and at that point I looked over and I saw something strange, and saw what appeared to be, to me, a black wiry ball. I couldn't say what it is. I didn't think that could be my rolled up yarn, or even my rugs. It seemed to have a dark extension.
I bent down to lift it up, but a red flag went off and then I pulled this string thing, pulling up, and two large appendages grabbed my hands, and I screamed, "My God. It's alive. It's human. It's a man."
And then this person rose up, and I screamed at the women, "please, get to the door. Get out of here. There is a man hiding in here."
Tr.259-260.
 {¶ 58} Byron testified that the intruder ran to the front door and she saw "[a] tall person fiddling with the door * * * kind of a man and a dark tan black thing with tan black dangles, lots of dark hair, dreadlocks." Tr. 260. Byron testified that she had seen the intruder's jacket and his dreadlocks as he was fleeing the house. She gave this same description to Officer Pizon, who was dispatched to her home just after the incident.
 {¶ 59} The defendant was arrested within blocks of Byron's home wearing the tan jacket and hairstyle Byron described to police. At the scene, Byron identified the man in the police cruiser as the man who had done odd jobs for her in the past. She identified defendant as the man who was wearing the same tan jacket as the intruder.
 {¶ 60} Detective Lamielle interviewed defendant after he was arrested. Lamielle testified that during that interview, defendant told him
 {¶ 61} * * * he went in her house on that date.
 {¶ 62} * * *
 {¶ 63} * * * He indicated the reason he went in her house was to take money he felt was owed to him.
 {¶ 64} * * *
 {¶ 65} He felt he was owed money for odd jobs he had done around the house and she had not paid him.
He informed me he called her on that date prior to coming over there, and that she didn't want him there and that made him mad. So he said he snuck over in the house, took the money, and then left.
 {¶ 66} Tr. 394-395.
 {¶ 67} Byron's and Lamielle's testimony establishes that defendant did not have permission to enter Byron's home on May 20th. Instead, defendant secretly entered the house and hid behind Byron's couch. This testimony, including defendant's admission to the officer, establishes the element of "stealth." On this record, we conclude that there was sufficient competent and credible evidence to establish each of the elements of the crime of burglary beyond a reasonable doubt.
 {¶ 68} We cannot conclude, therefore, that but for Lamielle's reference to defendant's refusal to sign the written statement, the outcome of the trial would clearly have been otherwise. And, again, we refrain from extending Carella, beyond presumptive conclusions. Accordingly, defendant's third assignment of error is overruled.
Mr. Sims was denied his rights to effective assistance of counsel guaranteed by article i, section 10 of the ohio constitution and thesixth and fourteenth amendments to the united states constitution.
 {¶ 69} Defendant argues that he did not receive effective assistance of counsel during trial. Counsel in this case was allegedly ineffective in: (1) failing to object to the trial court's determination that defendant is a repeat violent offender;[8] (2) failing to object to several instances of inadmissible hearsay (3) failing to object to the prosecutor's question about defendant's continuous incarceration since his arrest; (4) the state's comment during closing argument that the offense could have been worse; and (5) failing to file a motion to suppress defendant's refusal to sign a written statement.
 {¶ 70} In order to prove that this list of complaints amounts to "[t]he denial of the Constitutional right to effective assistance of counsel," defendant must meet a two-part test: he must show first, that "there was a substantial violation * * * of defense counsel's essential duties to his client, and second, * * * [that] the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391.
 {¶ 71} "`Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" State v. Woods, Cuyahoga App. No. 79674, 2002-Ohio-809, quoting Strickland v. Washington (1986), 466 U.S. 668, 689, 104 S.Ct. 2052,80 L.Ed.2d 674. "An attorney is presumed to be competent." Woods, supra. Defendant bears the burden of proving a claim of ineffective assistance of counsel. Id.
 {¶ 72} Defendant's first complaint is that his counsel should have objected to the trial court's determination that he is a repeat violent offender. Since we have already sustained defendant's Assignment of Error II because the state never showed the requisite "physical harm," we must agree with defendant that his attorney should have objected to the court classifying him as a repeat violent offender. Moreover, we can think of no scenario where counsel's failure to object could be deemed sound trial strategy. Defendant's next argument is that his counsel did not object to the admission of four separate instances of hearsay estimony during the state's case-in-chief. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "An `assertion' for hearsay purposes simply means to say that something is so, e.g., that an event happened or that a condition existed." Statev. Lamar (2002), 95 Ohio St.3d 181, 196-197.
 {¶ 73} The first example of inadmissible hearsay that defendant claims prejudiced him is Doerle's testimony that Byron told her she saw the intruder. Doerle testified as follows:
Q: Did Rita ever tell you she saw the person?
 A: Only after a long period of time when I was with her again atanother time.
* * *
Q: So the day this all happened, she didn't tell you, "I saw the person and it was Curtis Sims"?
A: No, she didn't say his name.
Tr. 309. Emphasis added.
 {¶ 74} Next, defendant claims the testimony of Eunice Crump, one of the two women inquiring about Byron's fur coats, included inadmissible hearsay. Crump testified that Byron told her that the intruder said "it's me" and that Byron told her, "It appeared to be the man who had been helping with the yard sale." Tr. 320, 322.
 {¶ 75} Defendant further argues that police officer Pizon's testimony also includes inadmissible hearsay. Pizon testified that Byron "[s]aid he was a tall black male, thin, with black braided hair and wearing a tan and brown jacket * * *." Tr. 339.
 {¶ 76} The last hearsay statement defendant challenges was made during Lamielle's testimony. Lamielle stated Byron explained to him the nature of her agreement with defendant. Lamielle testified as follows:
* * * She advised me they had an agreement for the work he was doing with her, that he was going to be paid with a T.V. and a VCR she had. If there was any money due besides the T.V. and VCR, he wanted it paid in cash, but he didn't want it paid in cash until he was completely done, because for the simple fact he told her he wanted to have money for a deposit on an apartment.
Tr. 397-398.
 {¶ 77} We agree that all the complained of testimony constitutes hearsay. However, the erroneous admission of hearsay evidence is harmless "so long as there was substantial other evidence to support the guilty verdict." State v. Collymore, Cuyahoga App. No. 81594, 2003-Ohio-3328, at ¶ 30, citing State v. Griffin (2001), 142 Ohio App.3d 65, 79,753 N.E.2d 967 (citations omitted).
 {¶ 78} In the case at bar, we have previously concluded that Byron's and Lamielle's testimony amply supports the guilty verdict. We reach the same conclusion even if the above testimony is excluded.
 {¶ 79} Next, defendant argues that his counsel was ineffective because he did not object to the state's question about how long he had been in jail. Defendant claims that he was prejudiced when the jury heard that he had been incarcerated since his arrest. Defendant fails to describe how he was prejudiced, however, by the question or his answer. Nor can we speculate.
 {¶ 80} Defendant further claims that during closing argument the prosecutor made an improper statement that denied him a fair trial. We disagree.
 {¶ 81} As noted in Pang v. Minch (1990), 53 Ohio St.3d 186, ¶ 3 of syllabus:
 {¶ 82} Great latitude is afforded counsel in the presentation of closing argument to the jury. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate. The assessment of whether these bounds are exceeded is, in the first instance, a discretionary function of the trial court, and such determination is not to be reversed on appeal absent an abuse of discretion.
 {¶ 83} Id. citing State v. Champion (1924), 109 Ohio St. 281, 289,142 N.E. 141, 143. The Ohio Supreme Court has articulated the test:
 {¶ 84} "* * * the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209,219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87. See State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300. When we review a prosecutor's closing argument we ask two questions: "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984), 14 Ohio St.3d 13, 14, 14
OBR 317, 318, 470 N.E.2d 883, 885. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz
(1980), 63 Ohio St.2d 150, 157, 17 O.O.3d 92, 97, 407 N.E.2d 1268,1273.
 {¶ 85} State v. Slagle (1992), 65 Ohio St.3d 597, 606-607,605 N.E.2d 916, 926.
 {¶ 86} In the case at bar, the comment defendant challenges was the prosecutor's statement that the incident "could have been much worse." Defendant claims this statement denied him a fair trial because it was an invitation for the jury to "speculate about potential injuries — which was not an element of the offense and not properly for their consideration." Defendant's Brief at p. 9.
Because, again, no objection was made to the state's comments, defendant has waived all but plain error.
 {¶ 87} We have reviewed the prosecutor's entire closing argument and the transcript. The jurors were instructed during voir dire and at the end of the case about the state's burden to produce evidence on each element of the crimes charged against defendant. They were specifically instructed that they were not to speculate or infer facts not based on the evidence. The jurors were also told that the closing arguments of the lawyers did not constitute evidence. With these instructions and the overwhelming evidence of defendant's guilt, we cannot conclude that the outcome of defendant's trial would have been different, had the state not made the comment defendant describes. Indeed, one could just as easily speculate that defendant's actions were not that bad because "the incident could have been much worse."
 {¶ 88} Finally, defendant asserts that his counsel was ineffective for failing to file a pretrial motion to suppress his post-arrest refusal to make a written statement. "Defense counsel is not required to file a motion to suppress in every case." State v. Pinchback, Cuyahoga App. No. 83757, 2004-Ohio-4501, at ¶ 61.
Counsel cannot be deemed ineffective for failing to file a motion to suppress when there is no justification for one; therefore, appellant cannot sustain his burden to prove counsel violated an essential duty to him on this basis. (Citations omitted.)
Id.
 {¶ 89} In view of Lamielle's testimony in this case about defendant's oral admissions during his interview of how and why he committed the subject offense, we conclude that requiring his counsel to file a motion to suppress his refusal to sign a written statement would have been unavailing.
 {¶ 90} Defendant has not met his burden of proving a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
 {¶ 91} Defendant's fourth assignment of error is overruled.
 {¶ 92} The judgment of the trial court is affirmed in part and reversed in part. The trial court's imposition of a mandatory prison term is vacated insofar as it was based on its erroneous finding that defendant was a repeat violent offender. This matter is hereby remanded for resentencing proceedings consistent with this opinion.
Judgment accordingly.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Calabrese, Jr., J., concur.
[1] Defendant was originally indicted on two counts. Count One, Burglary, carried a notice of prior conviction and a repeat violent offender specification; Count Two, charged the offense of Theft. Because the state dismissed Count Two it is not part of this appeal.
[2] Defendant does not challenge the state's evidence that he trespassed with stealth into Byron's home with purpose to commit a criminal offense. Moreover, the record supports the charge that defendant committed burglary by stealth.
[3] Ohio courts have defined "stealth" as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission." State v. Ward (1993),85 Ohio App.3d 537, 540, 620 N.E.2d 168; State v. Lane (1976),50 Ohio App.2d 41, 47, 361 N.E.2d 535.
[4] We also note defendant could have filed for a bill of particulars.
[5] "The degrees of murder in Virginia are specified in Va. Code Ann. § 18.2-32 (1975). Murder, other than capital murder, by poison, lying in wait, imprisonment, starving, or by any willful, deliberate, and premeditated killing, or in the commission of, or attempt to commit, arson, rape, robbery, burglary or abduction is murder of the first degree, punishable as a Class 2 felony." Jackson, at syllabus.
[6] Defendant does not cite Blakely, but he does cite its forerunners, which are sufficient to preserve the error here. Ring v. Arizona,
(2002), 536 U.S. 584, 153 L.Ed.2d 556, 122 S.Ct. 2428; Apprendi v. NewJersey, (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435.
[7] "Stealth" is defined as "as any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission." State v. Ward (1993), 85 Ohio App.3d 537,540, 620 N.E.2d 168.
[8] Defendant also claims his trial counsel was ineffective for failing to object to the errors described in Assignments of Error Nos. I and III. Because we have already determined that these two assignments of error lack merit, defendant's arguments about them here are moot.