JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant LeDon Gaither appeals from his convictions after a jury trial and the sentence imposed on two counts of complicity to commit aggravated robbery, with firearm specifications, having a weapon while under disability, and possession of criminal tools.
 {¶ 2} Gaither asserts his convictions are unsupported by the weight of the evidence. He further asserts the sentence imposed was disproportionately long when compared to that of his co-defendant.
 {¶ 3} This court has reviewed the record, however, and finds Gaither's assertions lack merit. Consequently, his convictions and sentence are affirmed.
 {¶ 4} Gaither's convictions stem from an incident that occurred on the evening of February 11, 2004. Two employees who worked at the Sunoco service station located at the corner of East 49th Street and Superior Avenue in Cleveland were robbed at gunpoint by a man later identified as Reginald Wright.
 {¶ 5} As the victims recounted the incident, Wright entered the service station's store, pulled out a shotgun from under his coat, "racked" a shell into the chamber while pointing it at them, and demanded money. Both men demanded money. Both men complied; additionally, Wright emptied the store's cash register drawer. Wright obtained approximately $2,700 before exiting the store.
 {¶ 6} Wright proceeded around the side of the building and entered a red Chevrolet Lumina. The car was registered to Wright but was driven by a man later identified as Wright's brother-in-law, appellant LeDon Gaither. Gaither drove away from the scene.
 {¶ 7} Steve Ingle, a resident of the neighborhood, was driving by when he noticed the Lumina because it was "sitting halfway in the street." As he watched, Ingle saw a man run to it "with something stuck under his coat." The man entered the front passenger seat and the Lumina's driver, Gaither, quickley drove away.
 {¶ 8} Ingle then observed one of the victims exit the service station store, looking shaken. When Ingle discovered the store had just been robbed, he told the victim, "I'll be right back. I think I know who did it." Ingle followed the Lumina in his own car while the victims summoned the police.
 {¶ 9} As he followed, Ingle saw the driver plainly. Gaither, for his part, also noticed Ingle; at one point, Gaither took a handgun and gestured out his window with it as a warning to Ingle. However, several police cars soon joined the pursuit, and the Lumina eventually stopped in the parking lot of the building where Gaither lived.
 {¶ 10} Gaither was removed from the car wearing a cast on his right leg. The shotgun lay on the parking lot pavement near the passenger side door, and a handgun was recovered from the passenger side floor. After Gaither and Wright were arrested, the officers conducted a "cold stand" for the victims and Ingle. The victims identified Wright as the man who robbed them at gunpoint. Ingle identified Gaither as the Lumina's driver. Thereafter, Wright and Gaither separately gave oral statements to the police; both men claimed the robbery was Wright's idea and Gaither had participated unwittingly.
 {¶ 11} Gaither and Wright subsequently were indicted together on two counts of aggravated robbery with firearm specifications, one count each of having a weapon while under disability, one count of felonious assault with firearm specifications, and one count of possession of criminal tools. Three of the counts against Wright additionally contained a notice of prior conviction and a repeat violent offender specification.
 {¶ 12} In April 2004, Wright reached a plea agreement with the state. In exchange for Wright's guilty plea to one count of aggravated robbery upon two victims with a three-year firearm specification, the remaining charges were dismissed.
 {¶ 13} Wright offered a new written statement to the police before receiving his sentence. He now asserted the robbery had been Gaither's idea, proposed to him because Gaither was familiar with the service with the service station, knew Wright had committed a previous armed robbery and, thus, would not be "afraid," and Gaither himself had a leg injury that prevented him from personally committing the crime. Wright also agreed to testify for the state at Gaither's trial.
 {¶ 14} When Gaither's case proceeded in May 2004, therefore, in addition to the victims, Ingle, and the police officers involved in the arrest and investigation, the state also presented Wright as a witness.
 {¶ 15} In his defense, Gaither maintained the original statements he and Wright gave were the accurate version of the incident. Gaither testified in his own behalf and presented the testimony of his nine-year-old daughter. Gaither's daughter indicated her dad had been home on the evening of the incident until he received a telephone call from "Uncle Reginald;" he then left in Wright's car to "pick him up."
 {¶ 16} Before giving the case to the jury, the trial court permitted the state to amend the aggravated robbery counts to include a charge of complicity. The jury ultimately found Gaither guilty of two counts of complicity to commit aggravated robbery with firearm specifications, having a weapon while under disability, and possession of criminal tools; the jury acquitted Gaither of the charge of felonious assault.
 {¶ 17} After obtaining a presentence report, the trial court sentenced sentenced Gaither to a term of incarceration that totaled eight years. He now presents the following two assignments of error.
 {¶ 18} "I. The verdict of guilty was against the manifest weight of the evidence.
 {¶ 19} "II. The judge abused her discretion in sentencing the Defendant to five (5) years on the aggravated robbery coupled with a mandatory three (3) year gun specification."
 {¶ 20} Gaither initially argues his convictions lack support in the weight of the evidence because Wright's testimony was given after he obtained an advantageous plea agreement and thus was unreliable. Upon a review of the record, however, his argument becomes insubstantial.
 {¶ 21} With regard to an appellate court's function in reviewing the weight of the evidence, it must be determined from the entire record that in resolving conflicts in the evidence, the jury "clearly lost its way" and created "a manifest miscarriage of justice;" cases in which this occurs are "exceptional." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. Thus, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily reserved for the jury. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 22} Wright's testimony did not constitute the only evidence against Gaither in this case. Instead, Ingle's testimony created a compelling corroboration of Wright's version of the incident.
 {¶ 23} Ingle's attention was drawn to the car Gaither drove because of its odd position halfway off the street and onto the sidewalk; the jury could infer Gaither was waiting for Wright near the service station fully aware the robbery was taking place.
 {¶ 24} This inference found strength in other evidence. Ingle described Wright's flight to the car carrying something under his coat, Gaither's circuitous driving route, and Gaither's gesture with a handgun at his pursuer. Unlike Wright, who attempted to flee when the police cornered them, Gaither was unable to do so because he wore a cast on his leg which prevented him from easy movement. The two guns and some of Wright's items of disguise were found at the scene of Gaither's arrest.
 {¶ 25} Additionally, Gaither admitted he himself owned two cars, but provided no explanation for driving Wright's car on the evening of the incident. His daughter, moreover, unwittingly contradicted her father's testimony by describing the events that occurred at her home that evening.
 {¶ 26} Based upon the evidence, therefore, the jury reasonably concluded Gaither was a willing participant in the aggravated robbery of the service robbery of the service station employees. State v.Pinchback, Cuyahoga App. No. 83757, 2004-Ohio-4501; State v. Tart (June 8, 2000), Cuyahoga App. No. 76223.
 {¶ 27} Gaither's first assignment of error, accordingly, is overruled.
 {¶ 28} Gaither next argues his sentence is improper solely on the basis that Wright received a lesser total term. This argument also is rejected.
 {¶ 29} Although Gaither claims on appeal he was merely a "get-away driver," and, thus, less culpable in the incident than Wright, the trial court gave no credit to any such claim. The trial court instead indicated it believed Wright, who professed to be a somewhat reluctant, although experienced, "leg man" for Gaither's plan to take advantage of the "sweet lick" presented by the service station. Gaither's criminal record, in conjunction with Wright's "moving" testimony that Gaither "came up with the idea" for the robbery at gunpoint, led the trial court to decide a total term of eight years was appropriate.
 {¶ 30} This court cannot conclude the decision was either unsupported or contrary to law. R.C. 2953.08(G)(2).
 {¶ 31} Accordingly, Gaither's second assignment of error also is overruled.
 {¶ 32} Gaither's convictions and sentences are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J. and Kilbane, J. concur.