JOURNAL ENTRY AND OPINION
{¶ 1} Curtis Sims has filed a timely application for reopening pursuant to App.R. 26(B). Sims is attempting to reopen the appellate judgment that was rendered by this court in State v. Sims, Cuyahoga App. No. 84090, 2005-Ohio-1978, which affirmed his conviction for one count of burglary, (R.C. 2911.12(A)(1)), but vacated the sentence of incarceration and remanded for resentencing. We decline to reopen Sims' original appeal.
 {¶ 2} Upon appeal to this court, Sims' appellate counsel was not required to raise and argue assignments of error that are meritless.Jones v. Barnes (1983), 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987. Appellate counsel cannot be considered ineffective for failing to raise every conceivable assignment of error on appeal. Id.; State v. Gumm,73 Ohio St.3d 413, 1995-Ohio-24, 653 N.E.2d 253; State v. Campbell,69 Ohio St.3d 38, 1994-Ohio-492, 630 N.E.2d 339. In addition, Sims must establish the prejudice which results from the alleged deficient performance of appellate counsel. Finally, Sims must also show that but for the alleged deficient performance of appellate counsel, the result of his appeal would have been different. State v. Reed, 74 Ohio St.3d 534,1996-Ohio-21, 660 N.E.2d 456. Thus, in order for this Court to grant the application for reopening, Sims must establish that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5).
In State v. Reed (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458, we held that the two prong analysis found in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). Spivey must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have been successful. Thus, Spivey bears the burden of establishing that there was a "genuine issue" as to whether he was a "colorable claim" of ineffective assistance of counsel on appeal.
State v. Spivey (1998), 84 Ohio St.3d 24, 1998-Ohio-704, 701 N.E.2d 696, at 25.
 {¶ 3} In support of his application for reopening, Sims raises the following proposed assignment of error:
APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL VIA HIS APPELLATE COUNSEL'S FAILURE, DURING DIRECT APPEAL, TO ASSIGN RELEVANT LAW AND SET FORTH AVAILABLE EVIDENCE THEREIN WHICH SHOWS THAT APPELLANT HAD BEEN DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL VIA TRIAL COUNSEL'S FAILURE TO: (1) FILE A PRETRIAL MOTION TO SUPPRESS AN ORAL — RATHER THAN AN UNSIGNED WRITTEN — STATEMENT/CONFESSION THAT APPELLANT MADE WHILE BEING HARASSED DURING A CUSTODIAL INTERROGATION; AND (2) NOTICE AND INFORM THE COURT AT TRIAL OF THE FACT THAT: (A) MS. BYRON, WHO WAS THE ONLY WITNESS TO THE ALLEGED BURGLARY APPELLANT WAS CHARGED WITH, DID NOT ACTUALLY IDENTIFY APPELLANT AS THE INTRUDER/BURGLAR SHE SAW IN HER HOUSE; AND (B) THE STATE HAD, AFTER THE JURY WAS SWORN AND EMPANELED DISMISSED THE CHARGE AGAINST APPELLANT AND THAT CHARGE WAS AN ESSENTIAL ELEMENT OF THE BURGLARY OFFENSE APPELLANT WAS CHARGED WITH HAVING COMMITTED.
 {¶ 4} Consideration of the proposed assignment of error as presently raised by Sims would not have resulted in a different outcome on appeal. This court, in the original appeal, specifically held that:
The record supports defendant's conviction for burglary by stealth beyond a reasonable doubt.
At trial, Byron testified that before she discovered the intruder, she was upstairs on her computer when she heard a noise. She yelled out for Doerle, but no one answered. She was checking other rooms on the second floor when Doerle called up to her about two women wanting to see the fur coats she was selling.
Byron described the events after she went downstairs:
"I was in the center hall, because there is a mirror on our door. Seems to me we were sort of in that area just entering the living room. I think they were trying them on and we were discussing the fur coats."
"And one woman said it was not fur, and I said, I have those, also, and that I have scrapbooks of pictures where I model them for the Love Boat.
"And I said, `I have pictures here on the floor and I will show them to you.'"
They were on the floor at the end of a couch awaiting for the movers who were arriving in a couple of days. They were there, and I bent down to pick them up off the floor."
* * *
"They were a little behind the couch, and at that point I looked over and I saw something strange, and saw what appeared to be, to me, a black wiry ball. I couldn't say what it is. I didn't think that could be my rolled up yarn, or even my rugs. It seemed to have a dark extension."
"I bent down to lift it up, but a red flag went off and then I pulled this string thing, pulling up, and two large appendages grabbed my hands, and I screamed, `My God. It's alive. It's human. It's a man.'"
"And then this person rose up, and I screamed at the women, `Please, get to the door. Get out of here. There is a man hiding in here.'"
Tr.259-260.
Byron testified that the intruder ran to the front door and she saw "[a] tall person fiddling with the door * * * kind of a man and a dark tan black thing with tan black dangles, lots of dark hair, dreadlocks." Tr. 260. Byron testified that she had seen the intruder's jacket and his dreadlocks as he was fleeing the house. She gave this same description to Officer Pizon, who was dispatched to her home just after the incident.
The defendant was arrested within blocks of Byron's home wearing the tan jacket and hairstyle Byron described to police. At the scene, Byron identified the man in the police cruiser as the man who had done odd jobs for her in the past. She identified defendant as the man who was wearing the same tan jacket as the intruder.
Detective Lamielle interviewed defendant after he was arrested. Lamielle testified that during that interview, defendant told him:
"* * * He went in her house on that date."
* * *
"* * * He indicated the reason he went in her house was to take money he felt was owed to him."
* * *
"He felt he was owed money for odd jobs he had done around the house and she had not paid him."
"He informed me he called her on that date prior to coming over there, and that she didn't want him there an that made him mad. So he said he snuck over in the house, took the money, and then left."
Tr. 394-395.
Byron's and Lamielle's testimony establishes that defendant did not have permission to enter Byron's home on May 20th. Instead, defendant secretly entered the house and hid behind Byron's couch. This testimony, including defendant's admission to the officer, establishes the element of "stealth." On this record, we conclude that there was sufficient competent and credible evidence to establish each of the elements of the crime of burglary beyond a reasonable doubt.
State v. Sims, supra, at 20.
 {¶ 5} Since sufficient evidence was adduced at trial to support Sims' conviction for the offense of burglary, consideration of the proposed assignment of error would not have resulted in a different outcome. In addition, it must be noted that the issues of an oral statement/unsigned written statement and the identity of Sims were previously raised and addressed upon appeal. Finally, dismissal of the theft count, during the course of trial, did not adversely affect the conviction for the offense of burglary. As previously stated by this court, "there was sufficient competent and credible evidence to establish each of the elements of the crime of burglary beyond a reasonable doubt." Accordingly, Sims has failed to meet the standard for reopening an appeal as required by App.R. 26(B). Strickland v. Washington, supra; State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128; Vaugh v. Maxwell (1965),2 Ohio St.2d 299, 209 N.E.2d 164.
 {¶ 6} Application for reopening is denied.
Celebrezze, Jr., J., concurs.
 Gallagher, J., concurs.