[Cite as *State v. Teasley*, 2019-Ohio-5122.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,

      Plaintiff-Appellee,      :

                      No. 108234

      v.                  :

MARVIN TEASLEY,          :

      Defendant-Appellant.      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 12, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-630930-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jillian J. Piteo, Assistant Prosecuting Attorney, *for appellee.*

Ruth R. Fischbein-Cohen, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Marvin Teasley ("Teasley"), appeals his burglary and theft convictions. For the reasons set forth below, we affirm.

{¶ 2} In August 2018, Teasley was indicted on one count of burglary, a felony of the second-degree, and one count of theft, a first-degree misdemeanor.

Teasley pleaded not guilty at his arraignment, and several pretrials were conducted. After rejecting an offer from the state to reduce the burglary charge to a third-degree felony, and after rejecting the exploration of a further reduction from a third to a fourth-degree felony, Teasley elected to have the matter tried to a jury. On January 19, 2019, a jury trial commenced.

{¶ 3} At the trial, the jury heard testimony from three witnesses, including Gerald Sims ("Sims"). Sims testified that he is employed as a maintenance technician at St. Timothy Park Apartments, a 40-unit independent living senior facility in Garfield Heights.

{¶ 4} Sims testified that on May 8, 2018, he arrived to work at approximately 4:30 a.m. to prepare the building, which was scheduled to be used as a primary election voting location that day. Around 5:00 a.m., Sims opened the community room and, after a few moments, noticed that the 55-inch television that was usually mounted on the wall was missing. Sims immediately called the Garfield Heights Police Department, and officers arrived shortly thereafter.

{¶ 5} Sims testified that when the police arrived, he escorted them to the community room and pointed out where the missing television had been mounted. Sims gave the officers a short tour of the building and then went to the property management office, where they proceeded to review video surveillance footage. Sims testified that upon reviewing the footage, they discovered that at approximately 1:00 a.m., there was an individual watching the television in the

community room. Sims testified that he instantly recognized Teasley as the individual watching the television.

{¶ 6} A series of still photographs, captured from the surveillance video footage, depicts Teasley's activities in the complex. One photograph depicts Teasley entering the apartment building, with a key, at 12:58 a.m. Another photograph depicts Teasley standing in front of the vending machine in the community room. Another still photograph depicts Teasley wheeling the television set outside the apartment building on a shopping cart.

{¶ 7} Sims testified that he only knew Teasley's first name, but had encountered him several times when Teasley was visiting a tenant named Ms. Banks ("Banks"). Sims testified that Teasley was not a tenant of the apartment building. Sims testified that because Teasley was not a tenant of the apartment, he would not have been issued a key and that a tenant would have to have given Teasley their key. Sims also stated that because Teasley was not a tenant, he was not allowed to be in the community room unescorted.

{¶ 8} Lisa Mauriocourt ("Mauriocourt"), the property manager of the apartment building, testified that as a Department of Housing and Urban Development ("HUD") funded complex, the residents are required to abide by strict federal guidelines. Mauriocourt explained that the building is comprised of 40 one-bedroom apartments, designed to accommodate one tenant per unit and that only the lease holder is considered a resident.

**{¶ 9}** Mauriocourt testified that tenants are allowed to have overnight guests for a maximum stay of three consecutive days, but management must have prior notification and the guest must sign in each time they enter the building. Mauriocourt testified that there are also strict guidelines about keys. Mauriocourt explained that each tenant is given three keys at the beginning of their tenancy; one for the entrance to the building, one for their respective unit, and one for their assigned mailbox. Mauriocourt testified that tenants are not allowed to duplicate the keys or to give them to other individuals.

**{¶ 10}** Mauriocourt testified that Teasley was not a tenant of the apartment complex, that he had applied to be a tenant, but HUD did not approve his application. Mauriocourt testified that she would see Teasley about five or six times per month when he was visiting Banks. Mauriocourt stated that on a few occasions, when she had to discuss some matter with Banks, Teasley would accompany Banks to the office.

**{¶ 11}** Mauriocourt testified that prior to the incident in May 2018, she had observed Teasley on video using a key to enter the complex. As a result, she issued a lease violation to Banks warning her not to give her keys to anyone else. Mauriocourt testified that when she issued the lease violation, Banks explained she had not been feeling well and gave her keys to Teasley, so she would not have to go downstairs to open the door. Mauriocourt testified that she had to issue another lease violation to Banks for violating the guest policy, because of reports that Teasley

was seen unaccompanied while smoking in the back of the building and while in the community room.

{¶ 12} After the state's case in chief, Teasley motioned the court for acquittal. The trial court denied the motion, and Banks took the stand in Teasley's defense.

{¶ 13} Banks testified that she has known Teasley for 40 years, that they had been engaged for two years, and that Teasley had lived with her since 2017. According to Banks, the property manager knew that Teasley was living in her unit. On cross-examination, Banks admitted that she allowed Teasley to stay with her, although it was a violation of HUD's guidelines. Banks also admitted giving Teasley the key to the front door, but stated that she also buzzed him into the building. Banks testified that she gave Teasley her keys on the night in question because she was sick and he was going to get her medicine.

{¶ 14} The jury found Teasley guilty of both charges. The trial court sentenced Teasley to two years in prison for burglary and six months for theft. The trial court ordered the sentences to be served concurrently to each other.

{¶ 15} Teasley now appeals, assigning the following three errors for review:

### Assignment of Error One

Since [Teasley] was charged with burglary, it was unfair and a disproportionate error not to charge [Teasley's] fiancé and the building manager as codefendants to the herein crime.

### Assignment of Error Two

The trial court erred in separately sentencing [Teasley] to allied offenses of similar import which are subject to merger.

Assignment of Error Three

The evidence lacked manifest weight; it was insufficient to convict appellant for burglary; and the conviction for burglary is contrary to law.

{¶ 16} For ease of review, we will begin with the third assigned error. Teasley argues his conviction for burglary was not based on sufficient evidence and was against the manifest weight of the evidence.

{¶ 17} Sufficiency is a test of adequacy. "'Whether the evidence is legally sufficient to sustain a verdict is a question of law.'" *State v. Williams*, 8th Dist. Cuyahoga No. 106563, 2018-Ohio-4612, ¶ 38, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

> When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

*Id.* at ¶ 38 quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 18} In the instant case, the jury found Teasley guilty of burglary in violation of R.C. 2911.12(A)(2), which provides:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> * * *
>
> (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person

other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

{¶ 19} Teasley does not contest the theft conviction, but contends the above elements for burglary were not satisfied, because he lived with a tenant of the building and used that tenant's keys to enter on the date of the charged offenses. We disagree.

{¶ 20} The evidence presented established that Teasley had no legal right to be unescorted in the building. The evidence presented also established that while a guest of a tenant of the building, Teasley should have been accompanied by his host. The HUD funded 40-unit complex was designed to house one resident per unit and only the approved tenant had a legal right to live in the unit. The evidence also established that tenants were allowed to have guests, who could stay up to a maximum of three consecutive days with prior approval. During that stay, the guest must sign in when entering the complex and must be accompanied by the tenant when visiting the common areas. In addition, the evidence established that Teasley applied to be a tenant, but HUD did not approve his application. As a result, despite Teasley's contention, he had no legal right to be unescorted or unaccompanied by his host in the building and was therefore trespassing.

{¶ 21} Further, although Teasley used Banks's keys to enter the building, he had no legal right to be in possession of the keys. The evidence established that it was a violation of the HUD guideline for Banks to have given her keys to Teasley. As

a result, although Teasley did not gain access to the building by force, his entrance was gained through stealth and deception.

{¶ 22} Stealth is not defined in the Revised Code as it relates to burglary. *State v. Stewart*, 8th Dist. Cuyahoga No. 86396, 2006-Ohio-1072, ¶ 17. Ohio courts have defined "stealth" as "any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission." *State v. Sims*, 8th Dist. Cuyahoga App. No. 84090, 2005-Ohio-1978, ¶ 5.

{¶ 23} Teasley entered the building at approximately 1:00 a.m. by using a key, which he had no legal right to possess. He then proceeded to the community room, where he had no legal right to be present unaccompanied. He committed the offense of burglary, through stealth, when he removed the television from its mount and wheeled it out of the building. Based on the foregoing, the state presented sufficient evidence to support Teasley's burglary conviction.

{¶ 24} Nonetheless, Teasley claims the burglary conviction was against the manifest weight of the evidence.

{¶ 25} Analyzing a claim under the manifest weight standard requires us to "'review[] [t]he entire record, weigh[] all of the evidence and all [of the] reasonable inferences, consider[] the credibility of the witnesses, and determine[] whether, in resolving conflicts in evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed[.]'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 26} As previously stated, Teasley does not dispute that he stole the television; instead he maintains he lived in the complex. Banks testified that the property manager knew that Teasley lived in the complex. However, both Mauriocourt, the property manager, and Sims, the maintenance technician, testified that they were familiar with Teasley as being a frequent guest of Banks, a tenant in the complex. In addition, Mauriocourt testified that HUD did not approve Teasley's application to become a tenant of the building.

{¶ 27} After reviewing the record, weighing the evidence and all the reasonable inferences, and considering the credibility of the witnesses, we cannot conclude the "jury lost its way" and created a manifest miscarriage of justice to warrant a reversal.

{¶ 28} Accordingly, the third assignment of error is overruled.

{¶ 29} In the second assignment of error, Teasley argues the trial court erred in separately sentencing him for burglary and theft.

{¶ 30} Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted and punished for all the offenses if any one of the following is true: (1) the conduct constitutes multiple offenses of dissimilar import; (2) the offenses were committed separately; or (3) the offenses were committed with separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus.

{¶ 31} As previously stated, burglary is defined as trespassing in an occupied structure that is a permanent habitation of any person when any person other than

an accomplice is present or likely to be present with the purpose to commit any criminal offense inside the habitation. R.C. 2911.12(A)(2). "Therefore, it is the intent to commit any criminal offense while trespassing that constitutes the commission of the burglary crime." *State v. Ongert*, 8th Dist. Cuyahoga No. 103208, 2016-Ohio-1543 ¶ 5, citing *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 64; *State v. Richardson*, 8th Dist. Cuyahoga No. 100115, 2014-Ohio-2055, ¶ 32.

{¶ 32} No criminal offense actually needs to be committed to support the burglary charge. *Id.*, citing *State v. Fields*, 12th Dist. Clermont No. CA2014-03-025, 2015-Ohio-1345, ¶ 18 (the burglary was complete upon entering the premises with the intent to commit a crime). Even if the criminal offense is actually committed, the burglary was already completed and the subsequent crimes were then committed with separate conduct. *State v. Yancey*, 8th Dist. Cuyahoga No. 104587, 2017-Ohio-1040, citing *State v. Huhn*, 5th Dist. Perry No. 15-CA-00006, 2015-Ohio-4929, ¶ 22.

{¶ 33} Here, the burglary was completed once Teasley entered the apartment building. The theft of the television was committed separately. Consequently, the two offenses were not allied, and the trial court did not err in not merging the offenses for purposes of sentencing.

{¶ 34} Accordingly, the second assignment of error is overruled.

{¶ 35} In the first assignment of error, Teasley argues that his fiancée Banks and the property manager Mauriocourt should have been charged with complicity

to commit burglary. In support of this argument, Teasley claims he lived with Banks, who told the property manager she had given him a key.

{¶ 36} We find this argument wholly without merit. As previously stated, Teasley had no legal right to be present in the building in any capacity other than as a guest of a tenant. In addition, Banks was in violation of HUD's guidelines when she allowed Teasley to use her key. Further, the evidence established that it was only after Banks was confronted by Mauriocourt and issued a violation that Banks admitted giving Teasley her key. At that juncture, Banks claimed she had given him the key because she was sick and he had to get her medicine. As a result, Teasley's argument is without merit.

{¶ 37} Accordingly, the first assignment of error is summarily overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., AND
EILEEN A. GALLAGHER, J., CONCUR